# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LINA THOUNG,

      Petitioner,

vs.

      Case No. 17-3032-EFM

UNITED STATES OF AMERICA,

      Respondent.

## MEMORANDUM AND ORDER

Plaintiff Lina Thoung has moved this Court to issue a writ of habeas corpus vacating the judicial removal order entered in *United States v. Thoung*, Case Number 12-cr-10177-EFM, for lack of jurisdiction. Thoung pleaded guilty and stipulated to her sentence, denaturalization, and the judicial order of removal entered in that proceeding. Thoung now seeks to vacate the removal order, arguing that this Court lacked jurisdiction to order her removal from the United States. For the following reasons, Thoung's petition for writ of habeas corpus (Doc. 1) is denied, and her Motion for Temporary Restraining Order (Doc. 7) is denied as moot.

### I. Factual and Procedural Background

Thoung, a citizen of Cambodia, was admitted to the United States in 2002 and later applied to become a lawful permanent resident in 2003. But in 2012, Thoung was indicted on

eight counts related to her use of a stolen identity to obtain a U.S. visa, naturalized U.S. citizenship, and a U.S. passport.

On December 13, 2012, she pleaded guilty to one count of document fraud in violation of 18 U.S.C. § 1546(a).  Per the terms of the plea agreement, Thoung stipulated and agreed that her U.S. citizenship would be revoked under 8 U.S.C. § 1451(e) as a part of the agreement, and agreed that the Court shall enter an order of revocation of her citizenship.  Additionally, Thoung jointly requested with the Government that the Court order her removal from the United States so that the U.S. Immigration and Customs Enforcement ("ICE") may execute the order of removal according to the applicable laws and regulations.  Furthermore, the plea agreement also included a waiver of appeal and collateral attack provision.  That provision provided that "[t]he defendant knowingly and voluntarily waives *any* right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction *or the components of the sentence* to be imposed herein including the length and conditions of supervised release (emphasis added)."

On January 23, 2013, Thoung and the Government jointly moved this Court to enter an order removing her from the United States upon completion of her sentence.  In the motion, Thoung advised the Court that she understood the stipulation and its consequences, and that she had voluntarily agreed to it.  The order entered by this Court incorporated Thoung's stipulations and ordered the defendant removed to Cambodia, as the parties requested.

After the order of removal was entered, Thoung was held by immigration authorities for over six months while they attempted to deport her to Cambodia.  Thoung was not immediately deported and was eventually released on an "Order of Supervision."

Thoung is now married to a U.S. citizen and would be eligible to apply for adjustment of status but for the order of removal. Accordingly, on February 28, 2017, she filed a petition for writ of habeas corpus to vacate the removal order, arguing that this Court lacked jurisdiction to enter the order. On September 29, 2017, Thoung was arrested by Immigration and Customs Enforcement ("ICE") and deportation proceedings were commenced. Thoung filed a motion for a temporary restraining order on October 6, 2017, requesting an order directing the United States to stop its efforts to deport her until this Court has had a chance to rule on the merits.

## II.     Discussion

### A.     Thoung's Argument

In her underlying criminal case, Thoung and the Government jointly requested and stipulated to an entry of a judicial order of removal as a condition of Thoung's plea agreement. When entering the order of removal, this Court assumed jurisdiction under 8 U.S.C. § 1228(c)(5), which provides that:

> The United States Attorney, with the concurrence of the Commissioner, may, pursuant to Federal Rule of Criminal Procedure 11, enter into a plea agreement which calls for the alien, *who is deportable under this chapter*, to waive the right to notice and a hearing under this section, and stipulate to the entry of a judicial order of removal from the United States as a condition of the plea agreement or as a condition of probation or supervised release, or both. The United States district court, in both felony and misdemeanor cases, and a United States magistrate judge in misdemeanor cases, *may accept such a stipulation and shall have jurisdiction* to enter a judicial order of removal pursuant to the terms of such stipulation (emphasis added).

A plain reading of this statute suggests that a U.S. District Court has jurisdiction to enter a stipulated judicial order of removal against any alien "who is deportable." In Thoung's underlying criminal case, she was found to be deportable under 8 U.S.C. § 1227(a)(1)(A) and

(a)(3)(B)(iii). Because Thoung was deportable "under this chapter," the Court assumed jurisdiction and entered the order of removal.

But Thoung now argues that this Court lacked jurisdiction to order her removal. Thoung posits that a District Court can only order an immigrant removed if that immigrant is deportable under 8 U.S.C. § 1227(a)(2)(A).[1] In other words, the immigrant must have been convicted of a crime classified as a "general crime" under § 1227(a)(2)(A) before the Court can enter an order of removal—even if the parties stipulated to the entry of such an order. According to Thoung, this is nonnegotiable; the District Court does not have authorization to enter an order of removal against an immigrant who is removable under some other subsection of 8 U.S.C. § 1227, like she was.

Obviously, the jurisdictional prerequisite Thoung proposes is not obvious upon a plain reading of § 1228(c)(5), which states that the District Court "shall have jurisdiction" over an alien "who is deportable." The "general crime" requirement Thoung is advocating for is found in § 1228(c)(1) and (c)(2). Section 1228(c)(1) provides:

> Notwithstanding any other provision of this chapter, a United States district court shall have jurisdiction to enter a judicial order of removal at the time of sentencing against an alien who is deportable, if such an order has been requested by the United States Attorney with the concurrence of the Commissioner and if the court chooses to exercise such jurisdiction.

Section 1228(c)(2) then provides the procedure for entering a judicial order of removal. Of particular relevance, § 1228(c)(2)(B) states:

---

[1] 8 U.S.C. § 1227(a) (2012) defines the various classes of deportable aliens. The specific provision Thoung cites to, § 1227(a)(2)(A), defines a class as those who have committed "general crimes." These crimes include crimes of moral turpitude, multiple criminal convictions, aggravated felonies, high speed flight, and failure to register as a sex offender. Thus, an immigrant deportable under § 1227(a)(2)(A) is one who has been convicted of one of these general crimes.

Notwithstanding section 1252b of this title, the United States Attorney, with the concurrence of the Commissioner, shall file at least 30 days prior to the date set for sentencing a charge containing factual allegations regarding the alienage of the defendant and identifying the crime or crimes *which make the defendant deportable under section 1227(a)(2)(A)* of this title (emphasis added).

Then, the District Court "may order the alien removed if the Attorney General demonstrates that the alien is deportable under this chapter."[2]

Thoung asserts that she was not convicted of a "general crime" as defined by § 1227(a)(2)(A), so this Court lacked jurisdiction to order her removal under § 1228(c)(2)(B). Here, Thoung does not contest that she is deportable under some other provision of this chapter other than § 1227(a)(2). Accordingly, her argument hinges entirely on the premise that § 1228(c)(5) (which governs the joint stipulation to the entry of an order of removal) is insufficient in itself to grant the District Court jurisdiction to enter an order of removal. In other words, Thoung is arguing that the procedures stated in § 1228(c)(2), particularly the "general crime" conviction requirement found in § 1228(c)(2)(B), apply to all judicial orders of removal—even stipulated orders under § 1228(c)(5), despite the fact that § 1228(c)(5) does not explicitly require a "general crime" conviction.

In support, Thoung cites to written guidance issued by the Department of Justice ("DOJ"). For example, the DOJ's April 28, 1995 "Memorandum on Deportation of Criminal Aliens" explains that "[u]nder the Department's interpretation of the statute, stipulated judicial deportation should be sought only if the offense to which the alien defendant will plead guilty

---

[2] 8 U.S.C. § 1228(c)(2)(D)(iv) (2012).

causes him to be deportable under 8 U.S.C. § 1251(a)(2)(A) [the pre-1996 statute defining 'general crimes']."[3]

Thoung also cites to *United States v. Angel-Martinez*,[4] a 1997 case decided shortly after the 1996 amendments, which stated:

> Immigration Judges have exclusive jurisdiction to determine an alien's deportability. Congress has determined that administrative proceedings before Immigration Judges shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States. This statutory mandate precludes a district court from making any determination of a defendant's deportability.
>
> Although Congress provided one exception to this jurisdictional bar, *see* 8 U.S.C. § 1229a(a)(3), that exception requires that the United States Attorney request deportation and that the Commissioner consent, 8 U.S.C. § 1228(c)(1). *The same jurisdictional requirements apply even where a defendant stipulates to deportation* (emphasis added). *See* 8 U.S.C. § 1228(c)(5).[5]

According to Thoung, one of the "jurisdictional requirements" that applies, even where a defendant stipulates to deportation, is that the immigrant must be deportable under § 1227(a)(2)(A) for a "general crime" conviction.

**B.      Stipulated Judicial Orders of Removal Do Not Require a "General Crime" Conviction Under § 1227(a)(2)(A)**

The Court concludes that § 1228(c)(5) is sufficient in itself to confer the District Court jurisdiction to enter an order of removal; and there is no requirement that the immigrant be

---

[3] Attorney General April 28, 1995 Memorandum on Deportation of Criminal Aliens, p. 5, *available at* https://www.justice.gov/ag/attorney-general-april-28-1995-memorandum-deportation-criminal-aliens.
       In 1996, Congress made several amendments to the deportation statute. These amendments, which took effect on May 1, 1997, will be explained in considerable detail *infra*.

[4] 988 F. Supp. 475 (D.N.J. 1997).

[5] *Id.* at 480–81 (internal quotations and some citations omitted).

deportable under § 1227(a)(2)(A) in order for the District Court to enter an order of removal based upon a joint stipulation.

1.    The 1996 Amendments Render the DOJ Guidance Obsolete

The DOJ guidance Thoung cites explains that, under the DOJ's interpretation, even stipulated orders of removal require a "general crime" conviction. But this guidance was issued in 1995, before the amendments took effect on May 1, 1997.[6] Prior to the amendments, there was no provision dedicated to the joint stipulation to the entry of an order of removal (i.e., the provision currently codified at § 1228(c)(5)). In fact, "joint stipulation" was not even mentioned in the statute. In other words, prior to 1997, the judicial removal statute only specified one method for the District Court to enter an order of removal.[7] This method was nearly identical to the currently codified § 1228(c)(1)–(2), and required that the immigrant be deportable under § 1251(a)(2)(A) (for committing a "general crime"). Thus, it seems very reasonable for the DOJ to interpret the judicial removal statute to require that the immigrant be deportable under § 1251(a)(2)(A), even when the parties jointly stipulate to an order of removal. There was simply no mention in the statute of an exception to the requirement of a "general crime" conviction.

The 1996 amendments kept these provisions largely intact, but did make one noticeable change to the language. Previously, the District Court only had "jurisdiction to enter a judicial order of deportation . . . against an alien whose criminal conviction causes such alien to be

---

[6] Thoung stated that the effective date of the amendments was May 1, 1996. However, the United States Code specifically provides that the relevant amendments became effective "on the first day of the first month beginning more than 180 days after Sept. 30, 1996," which was May 1, 1997.

[7] *See* 8 U.S.C. § 1252a(d)(1)–(2) (1994) (codified as amended at 8 U.S.C. § 1228(c)(1)–(2) (2012)).

deportable under section 1251(a)(2)(A) of this title" (i.e., a "general crime" conviction).[8] But the amended statute grants the District Court "jurisdiction to enter a judicial order of removal at the time of sentencing against an alien who is deportable."[9] Thus, Congress effectively eliminated the threshold requirement that the alien must have a "general crime" conviction before the District Court can assume jurisdiction, replacing it with a broader requirement encompassing any deportable alien, regardless of which specific provision they were convicted under.

Additionally, the amendments also added an entirely new provision titled "[s]tipulated judicial order of removal."[10] Under this current provision, the U.S. Attorney, with the concurrence of the Commissioner, may "enter into a plea agreement which calls for the alien, *who is deportable under this chapter*, to . . . stipulate to the entry of a judicial order of removal from the United States as a condition of the plea agreement."[11] The District Court may then "accept such a stipulation and *shall have jurisdiction* to enter a judicial order of removal pursuant to the terms of such stipulation."[12]

The effect of the amendments was to create two methods for the District Court to enter an order of removal, where there previously was only one. First, there is the "old" method for cases in which the parties do not jointly stipulate to an order of removal, found in 8 U.S.C. § 1228(c)(1)–(2). In these cases, the District Court only has jurisdiction to enter an order of removal against an alien who has been convicted of a "general crime." This conclusion

---

[8] 8 U.S.C. § 1252a(d)(1) (1994) (codified as amended at 8 U.S.C. § 1228(c)(1) (2012)).

[9] 8 U.S.C. § 1228(c)(1) (2012).

[10] Pub. L. 104-308 § 374(a)(3) (1996) (codified as amended at 8 U.S.C. § 1228(c)(5) (2012)).

[11] 8 U.S.C. § 1228(c)(5) (2012) (emphasis added).

[12] 8 U.S.C. § 1228(c)(5) (2012) (emphasis added).

might seem at odds with § 1228(c)(1)'s broad grant of jurisdiction for the District Court to enter an order of removal against any "alien who is deportable."  But the very next provision, § 1228(c)(2), provides the procedure for the request and entry of such orders.  And it dictates that the U.S. Attorney, with the concurrence of the Commissioner, may only request an order of removal after filing "a charge containing factual allegations regarding the alienage of the defendant and identifying the crime or crimes which make the defendant deportable under section 1227(a)(2)(A) of this title" ("general crimes").[13]  So while the Court has broad jurisdiction over any "alien who is deportable," Congress has limited the class of aliens against whom the Government may seek such an order to those who have been convicted of a "general crime."

Second, there is the "new" method (as of the 1996 amendments) for cases in which the parties jointly stipulate to an order of removal, found in 8 U.S.C. § 1228(c)(1), (5).  In these cases, the District Court has jurisdiction to enter an order of removal against any "alien who is deportable."[14]  Again, § 1228(c)(1) grants the District Court broad jurisdiction over any deportable alien.  But, unlike the "old" method, there is nothing in the statute to limit the Court's jurisdiction to a narrower class of aliens when entering an order of removal pursuant to a joint stipulation.  The procedures outlined in § 1228(c)(2)—specifically the provision requiring the Government to identify a "general crime" conviction—are not applicable.  The procedures for entering an order of removal pursuant to a joint stipulation are wholly contained within § 1228(c)(5), titled "[s]tipulated judicial order of removal."

---

[13] 8 U.S.C. § 1228(c)(2)(B) (2012).

[14] 8 U.S.C. § 1228(c)(1) (2012).

Thoung encourages this Court to infer § 1228(c)(2)'s list of procedures as "jurisdictional requirements" that must be satisfied before the District Court may enter an order of removal even when the parties have stipulated to such an order. True, under the DOJ's interpretation of the pre-1996 statute, a "general crime" conviction was a prerequisite to an order of removal, even when the parties jointly stipulated to the entry of such an order. But Congress has since made two important amendments.

In 1996, Congress added a new subsection, § 1228(c)(5), to specifically address stipulated judicial orders of removal against an alien "who is deportable." At the same time, Congress also eliminated the threshold requirement that the alien must have a "general crime" conviction before the District Court can assume jurisdiction.[15] Congress replaced this requirement with a broader grant of jurisdiction over any "alien who is deportable." Thoung's interpretation would render this amendment superfluous because the statute would always require a "general crime" conviction, even when the order has been jointly stipulated to.

The Court prefers a more sensible interpretation. As clearly defined in the first subsection, the District Court "shall have jurisdiction to enter a judicial order of removal . . . against an alien who is deportable." Then, as explained in § 1228(c)(2), the Government may only request an order of removal *sua sponte* when the defendant has been convicted of a "general crime."[16] This provision does not limit the Court's jurisdiction, but merely places limits on the Government's ability to seek deportation. But the Court may enter an order of removal against

---

[15] *Compare* 8 U.S.C. § 1252a(d)(1) (1994) ("[A] United States district court shall have jurisdiction to enter a judicial order of deportation at the time of sentencing against an alien whose criminal conviction causes such alien to be deportable under section 1251(a)(2)(A) of this title . . . .") *with* 8 U.S.C. § 1228(c)(1) (2012) ("[A] United States district court shall have jurisdiction to enter a judicial order of removal at the time of sentencing against an alien who is deportable . . . .").

[16] *See* 8 U.S.C. § 1228(c)(2)(B) (2012).

any "alien who is deportable" when the parties have jointly stipulated in accordance with § 1228(c)(5).

> 2. The "Jurisdictional Requirements" Mentioned in *Angel-Martinez* Do Not Include a "General Crime" Conviction as Thoung Insists

Additionally, Thoung also encourages this Court to read *Angel-Martinez* as authority supporting the proposition that a "general crime" conviction is a "jurisdictional requirement" that must be satisfied before the Court may enter an order of removal. After a thorough reading of *Angel-Martinez*, the Court finds the does not stand for the proposition that Thoung insists it does. In *Angel-Martinez*, the Court wrote that "[t]he same jurisdictional requirements apply even where a defendant stipulates to deportation," citing to § 1228(c)(5).[17] The Court, however, was not referring to the list of procedures outlined in § 1228(c)(2) as "jurisdictional requirements." Rather, the Court was explaining the proposition that the District Court is generally barred from determining whether an alien may be removed from the United States.[18] Section 1229a(a)(3) provides that a procedure before an immigration judge "shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States." "This statutory mandate precludes a district court from making any determination of a defendant's deportability."[19]

But the provision goes on to exempt proceedings conducted under § 1228, which includes stipulated judicial orders of removal.[20] The *Angel-Martinez* Court went on to explain,

---

[17] *Angel-Martinez*, 988 F. Supp. At 481 (citing 8 U.S.C. § 1228(c)(5)).

[18] *See id.* at 480–81.

[19] *Angel-Martinez*, 988 F. Supp. at 481.

[20] 8 U.S.C. § 1229a(a)(3) (2012).

"[a]lthough Congress provided [this] one exception to this jurisdictional bar, that exception requires that the United States Attorney request deportation and that the Commissioner consent. The same jurisdictional requirements apply even where a defendant stipulates to the deportation."[21] Thus, the "jurisdictional requirements" that *Angel-Martinez* referred to were the U.S. Attorney's request for deportation and the Commissioner's consent. These requirements were, without question, met in Thoung's underlying criminal case. There was no mention in *Angel-Martinez* of a "general crime" conviction being a prerequisite to the entry of a stipulated judicial order of removal. Nor does this Court infer such a prerequisite. A District Court has jurisdiction to enter such orders against any alien "who is deportable under this chapter,"[22] not just those aliens who have been convicted of a "general crime."[23]

**C.      This Court Had Jurisdiction to Enter The Stipulated Order of Removal**

Thus, a District Court "*shall have* jurisdiction to enter a judicial order of removal" if: (1) the plea agreement is entered into under Fed. R. Civ. P. 11; (2) the alien is deportable under 8 U.S.C. §§ 1221–1232; (3) the parties stipulate to the entry of a judicial order of removal as a condition of the plea agreement; (4) the case involves either a felony or misdemeanor; (5) the U.S. Attorney requests deportation; and (6) the Commissioner consents.[24]

These requirements were all satisfied in Thoung's underlying criminal case prior to this Court's entry of the stipulated order of removal. First, the plea agreement was entered into under Rule 11. Second, Thoung stipulated, and this Court agreed, that she was deportable under

_____

[21] *Angel-Martinez*, 488 F. Supp. at 481 (citing 8 U.S.C. § 1228(c)(1), (5)).

[22] 8 U.S.C. § 1228(c)(5) (2012).

[23] 8 U.S.C. § 1228(c)(2)(B) (2012).

[24] *See* 8 U.S.C. § 1228(c)(5) (2012).

8 U.S.C. § 1227(a)(1)(A) and (a)(3)(B)(iii).  Third, the parties stipulated to the entry of a judicial order of removal as a condition of the plea agreement.  Fourth, Thoung entered into a plea of guilty for one count of document fraud in violation of 18 U.S.C. § 1546(a), a felony.  Fifth, the U.S. Attorney requested Thoung's deportation in the Request for Stipulated Order of Judicial Removal of Defendant filed on January 23, 2013.  And finally, the ICE Commissioner concurred in this request in the Notice of Concurrence of Immigration and Customs Enforcement to Judicial Removal filed on January 17, 2013.

Accordingly, this Court had jurisdiction to enter the order of removal.

**IT IS THEREFORE ORDERED** that Thoung's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that Thoung's Motion for Temporary Restraining Order is **DENIED AS MOOT.**

**IT IS SO ORDERED**.

Dated this 11th day of October, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE